A. H. McGUFFEY for plaintiff.

---

In Special Term—December 1854.

GHOLSON, J. presiding.

## MOSES BROOKS *vs.* W. F. TODD.

A failing debtor may prefer a creditor in Ohio, but the transaction is deemed unjust, and it must be free from any just suspicion as to its honesty and fairness; the parties are required to act with the most scrupulous good faith, and look with an eye single to the object intended, a fair sale or security to satisfy, or provide for the debt to be preferred; and they must take care that no unjust or unnecessary delay or hindrance be offered to the rights of others.

An action may be maintained upon the judgment of a Justice of the Peace; and it is no bar to such action that the judgment might be enforced by execution.

In such an action the plaintiff may resort to the provisional remedies of the Code; he may sue out an attachment; and as he is not estopped as to the facts he has alleged, he may have a decision on the merits of the motion, though the Justice below discharged the attachment.

This does not conflict with the principle of comity; that principle never forbids full enquiry into the merits, except in cases where the party against whom a decision has been had in one tribunal, would have the right to have the matter re-examined in a higher or appellate Court.

Upon this principle, though an order of attachment may have been discharged by a tribunal of co-ordinate jurisdiction, the plaintiff, having sued out another, would have the right to ask the opinion of the Court from which it issued, as to its validity. And the party may in such case ask for the judgment of the Court independent of, and without reference to the decision of the other Court.

22

Motion to discharge attachment.

The facts are sufficiently set out in the opinion of the Court.

GHOLSON, J.

There are two grounds on which the present motion is rested : 1. That the charge of a fraudulent disposition of property is untrue.    2. That the present action is founded on a judgment rendered by a Justice of the Peace ; that in the course of the proceedings before the Justice, the same charge was made, and decided not to be tenable, and the order of attachment issued upon it was discharged.    It is, therefore, claimed that both the present action and the order of attachment issued in it, are vexatious and should be dismissed.

Upon the first ground, affidavits have been offered, on the part, both of the defendants making the motion to discharge, and of the plaintiff by whom it is resisted.    No exception has been taken to the sufficiency of the affidavit, on which the order of attachment issued, and the propriety of the order is now to be tested, on the facts disclosed by the affidavits.

On the 19th of March 1854, the defendant W. F. Todd purchased a drug store from H. Bishoprick for $5000. Of the purchase money $1000 was paid, the balance, $4000, was secured by notes endorsed by G. R. Todd, the brother of the defendant.    Of the $4000 thus secured $1000 has been since paid.    It appears from a statement filed with the affidavit of G. R. Todd, that prior to the purchase from Bishoprick, whether in the expectation of such a purchase or not, is not shown, articles were bought of Gilbert Mentz & Co. on the 1st and 11th of February, 1854, and of Jules Heane on the 11th, to the amount of

$2223.18. Of this amount there appears to have been paid $847.48. In addition to the stock thus originally bought, amounting in all to $7223.18, subsequent purchases were from time to time made, as shown by the same statement, to the amount of $2578.85. Of these later purchases all, except $746.24, appears to have been paid. The statement shows, that since the purchase from Bishoprick, and not including the $1000, then paid, there has been paid on purchases $3680.09. Of this, it is claimed, that G. R. Todd furnished in cash loaned $1196. 77, leaving to have been paid from the sales or otherwise $2483.32. What were the expenses; what the actual sales; what losses, if any, were sustained during the period of about seven months, the business was carried on, is not stated, and no books appear to have been kept.

On the 23d of October 1854, W. F. Todd sold the drug store to his brother G. R. Todd, the consideration of the sale being that G. R. Todd was "to pay all the debts due on account of the concern." No invoice of the goods sold was made; no exact statement of the debts assumed, their amount, or to whom due was then made; nor, indeed, is yet furnished.

If I were to consider this case on the affidavits of the defendant alone, it would appear that W. F. Todd, being in doubtful circumstances, and a loss to his creditors being anticipated, made an assignment or sale to secure some in preference to others. In such a case the law of this State is now fully settled, by the highest authority, that the transaction must be free from any just suspicion, as to its entire fairness and honesty. In several of the States such a preference is now prohibited by statute. We have not yet gone so far; but to justify a transaction in itself

deemed unjust, the most scrupulous good faith in other respects is required. The parties are required to look with an eye single to the object intended, a fair sale or security, to satisfy or provide for the debt to be preferred, and they must take care that no unjust or unnecessary hindrance or delay be offered to the rights of others. The language of our Supreme Court in Fassett *vs.* Faber, 20 *Ohio* 540, 545, on this subject is emphatic and strong. "A creditor has a right to secure himself by obtaining a lien on the property of a failing debtor; and if done fairly, he may thus obtain a preference over other creditors. The creditor must act solely for the purpose of securing himself, without interposing any barrier to the rights of others, except such as may be necessary to effect that object."

According to these principles and looking at all the facts and circumstances appearing in this case, I do not see how the sale from W. F. Todd to his brother G. R. Todd can be sustained? I should find difficulty in sustaining any sale of goods made to prefer one creditor to another, where there was even a probability that the goods sold exceeded in value the consideration, if such sale were made, as this was, on a conjectural estimate of amount and price, no invoice taken, even the estimate made, if applied to specific articles, not preserved or at least not exhibited; vendor and vendee, and they brothers, looking over the goods, and for aught that appears, preserving only in their own minds, the estimate placed on the different articles: and those articles, in number such as would be likely to form the stock of a drug store. And, then, if the value of the thing sold were fixed, there is doubt and uncertainty as to the consideration to be paid. "All

debts due on account of the concern;" no statement of those debts being made, no definite time for their payment being fixed, no proper evidence of their assumption being taken, is certainly an unsatisfactory showing to be submitted to creditors not provided for, of the consideration of a sale, taking from them a fund, on which they had relied, for the payment of their just claims. Indeed, if G. R. Todd incurred no liability for the debts assumed, except from his promise to pay them, his brother W. F. Todd still remaining liable for the debts, the only ground on which he would be held liable, there being no agreement in writing, would be in respect of the goods placed in his hands by the sale. And, in this view, an important question might arise whether if the goods did not yield a fund adequate to the payment of the debts, he would be liable at all; for it has been held, that in this class of cases to escape the effect of the statute of frauds, the promise must not exeed the consideration. Thomas *vs*. Williams, 10 *B. & C.* 21 *E. C. L. R.* 143.

I need not, however, press this view of the case, for in looking further into the testimony, there are other circumstances unexplained, showing that the transaction was not consistent with the just rights of creditors, and must from its very nature have improperly operated to their hindrance and delay. From the testimony offered, no other conclusion can be formed, than that G. R. Todd at the time of the purchase was in circumstances of insolvency, or at least in no position to add to the security of creditors, by taking the property of their debtor, and substituting his assumption to pay their claims at some indefinite period in the future. He was a near relative of the debtor, and, though it does not clearly appear in what

relation, was in some way connected with the management of the business. The case, then, appears to fall within that class of which there have been too many, of sales to an irresponsible relative or clerk, either on a protracted credit, or, as in the present case, on an indefinite assumption of the payment of the claims of creditors. In these cases there is a creation of a capacity to purchase on the part of the vendee, which would not otherwise exist; this capacity is created, as he is bound to know, at the expense or at the risk of creditors. It may be a benefit to him, such may be one of the motives, and men may mislead themselves into a belief that it is fair and proper. They may consider it only a means of setting forward in the world a relative or friend, though it too frequently happens there is a secret reservation of some personal benefit. But whether there be or not, it is, in my judgment, a dealing with property which should be justly and faithfully applied in the payment of debts, that cannot be sanctioned. Indeed, if such a compelled extension of debts were permitted in the first instance, as a capacity to purchase of this description might be indefinitely created, creditors would have to expect from the vendee a like peremptory demand for delay. Failing debtors cannot be allowed to put forward in business their relatives or clerks, at the expense of their creditors. The rule, that a man must be just before he is generous, as fully applies in such a case, as if there was an actual gift.

In considering the second ground of the motion, the question whether the action be maintainable, though it may be one of some novelty in our courts, does not, I apprehend, present much difficulty, either on authority or principle. As I had occasion to remark in a case recently

decided, Swasey *vs.* Laycock, an action of debt has been held to be maintainable on the judgments of the superior courts of law in England, and the right to issue an execution is no bar to the action; *Salk.* 209; 1 *Chitty Pl.* 111. Chitty, also, states that an action may be brought on the judgment of an inferior court of record. It is not and cannot be claimed, that the proceedings before a Justice do not constitute a record, so as to be the foundation of an action. The objection is, that there is a right to enforce the judgment by execution; that this forms no bar, the authorities cited fully show. In England by a statute, cited in *Chitty*, with a view to check unnecessary suits on judgments, the plaintiff is precluded from recovering costs, unless the court or one of the judges shall otherwise direct; but the right to sue, is not questioned.

There may be very important reasons why the plaintiff in a judgment may desire to bring an action upon it, though he would also have the right to issue an execution, and some of these reasons apply, peculiarly, to judgments rendered by a Justice of the Peace. The validity of a judgment may be questioned—in other States and countries a judgment in a court having no clerk and seal may not be evidence. There is not much danger of the right to sue in such cases being abused, and I see no reason to doubt that it exists.

The plaintiff having a right of action in the court on his judgment, there is no legal objection to a resort on his part to the provisional remedies authorized by the Code, and among them to an attachment, on the ground that the defendant has made a fraudulent disposition of his property, unless the decision of the Justice of the Peace

on that point should be deemed conclusive. If the plaintiff is estopped from making such a charge against the defendant by the decision of a court of competent jurisdiction, it might be proper for me on this motion to give effect to that estopel. But I by no means understand such to be the effect of the decision of the Justice of the Peace, discharging the attachment. A decision of a court granting or discharging an order of attachment cannot, I think, be properly deemed such a final order or judgment as to conclude the parties in reference to the facts disputed. If it were, the plaintiff, whose attachment is discharged should be allowed a writ of error, which could hardly be maintained. But whether it could or not, the order discharging the attachment being a mere collateral matter, not affecting the merits of the action, and made on a summary hearing, cannot conclude as to any questions of fact.

The plaintiff, then, having a legal right to sue out an attachment, and there being no estopel upon him as to the facts he has alleged, I cannot see why he is not entitled to the benefit of a decision on the merits of the motion, from any Court in which he may sue. The principle of comity, even, does not extend to such a case, if the plaintiff had no right to a writ of error. That never forbids a full inquiry into the merits, except in cases where the party against whom a decision has been had in one tribunal, would have the right to have the matter re-examined in a higher or appellate court. Upon this principle, though an order of attachment may have been discharged by a tribunal of co-ordinate jurisdiction, the plaintiff having sued out another, would have the right to ask the opinion of the Court from which it issued as to its validity.

"And the party may in such case ask for the judgment of the Court independent of, and without reference to, the decision of the other Court in the same case."

[*Re* Earl of Harrington, 2 *Ell. & Black. b.* 75, *E. C. L.* 675.]

It is proper to observe that facts have been presented to me, which were not in the case on its former presentation, and which may perhaps account for the different conclusion to which I have arrived as to the right of the plaintiff to retain the benefit of his order of attachment. I think, that he is so entitled, and shall therefore overrule the motion.

COFFIN & MITCHELL for plaintiff.

A. S. SULLIVAN for defendant.